Commonwealth *ex rel.* W. G. Armstrong *versus* The Commissioners of Allegheny.

*Mandamus.—Requisites of Return.—Demurrer.*

1. The appropriate functions of a writ of *mandamus* are the enforcement of duties to the public by officers and others, who neglect or refuse to perform them, and for which there is no other specific legal remedy.

2. The presentation to the court of a *primâ facie* case of duty on the part of the respondent, and an obligation to perform it, must precede the granting of an alternative *mandamus*, and is considered as done when such a writ is awarded by the court.

3. The respondent, on service of such a writ, is bound to obey it, or else by a demurrer, or by a traverse of the facts therein set forth, either generally or by way of confession and avoidance, show cause why he should not.

4. In case of a traverse, the facts relied on must be set forth, not argumentatively, evasively, or inferentially, but clearly, specifically, and certainly, so that the court may see at once whether if established they are sufficient as the alterations for obedience to the writ.

5. The case of Hamilton *v.* The Councils of Pittsburgh, 10 Casey, Thomas *v.* The Commissioners of Allegheny Co., 8 Casey 218, Middleton *v.* The Commissioners of Allegheny Co., antè, p. 237, affirmed.

6. On a demurrer, everything well and sufficiently pleaded or returned is admitted, but inferences from facts, arguments, or conclusions, are not.

7. The pleas or averments in this case examined.

THIS was an alternative *mandamus* issued out of the Supreme Court of Pennsylvania, in the name of the Commonwealth, on the relation of W. G. Armstrong, *against* the Commissioners of Allegheny county.

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

The writ issued while the court was in session in the Eastern District of this state, and recited, *inter alia*, the incorporation and organization of the "Pittsburgh, Kittanning and Warren Railroad Company," which name, by a subsequent Act of Assembly, was changed to that of the "Allegheny Valley Railroad Company."

That the County of Allegheny, through its commissioners, was duly authorized, on the recommendation of the grand jury of the county, to subscribe to the capital stock of said company an amount not exceeding ten per cent. of the assessed valuation of the company, and in pursuance thereof had subscribed for 5000 shares of stock, amounting to $750,000, and had delivered to said company coupon bonds of $1000 for that amount.

That the relator is the owner of one of said bonds, on which a large amount of interest is due, and that the commissioners had wholly neglected and refused to pay said interest, or to make provision for the payment of the same.

That it is by law the duty of the said commissioners, in each and every year, to provide for the payment of said interest, by assessing and collecting such taxes as are necessary for the purpose. That, although the said commissioners had assessed a tax for this purpose, and, on the 7th of July 1857, issued their precept for the collection thereof, yet, on the 26th of October 1857, a majority of said commissioners had revoked said proceedings, and directed that the extra assessment made for railroad purposes should be taken off.

Whereof the relator was deprived, &c., &c.

Commanding the commissioners that they should, at their next annual meeting for estimating the probable expenses of the county, make full and ample provision for raising money to pay the interest on the said certificates or bonds, &c., &c., or show cause why they cannot do so.

The writ was duly served on John McIlhenny, Zacheus Patterson, and William Perkins, Commissioners of Allegheny county.

A copy of the bond held by the relator was attached to the petition, by which it appeared that they were dated May 2d 1853, and payable thirty years after date to the Allegheny Railroad Company or bearer, with interest at the rate of six per cent. per annum, for which coupons were attached.

To this writ the respondents, on the 18th of April 1859, filed a return, denying, first, the jurisdiction of the court in the premises, and then assigning numerous reasons for not complying with the command of the writ; which are all quoted and considered in the annexed opinion of the court in this case, or in the opinion delivered in the case *ex rel.* Middleton, *ante*, p. 237.

The case was argued by *George Harding*, *Eli K. Price*, and

Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

*Wm. M. Meredith,* for the relator, and by *Barton, Williams,* and *Howard,* for respondents.

The opinion of the court was delivered, November 19th 1860, by

THOMPSON, J.—*Mandamus* is a high prerogative and remedial writ, the appropriate functions of which are the enforcement of duties to the public, by officers and others, who either neglect or refuse to perform them. It follows, therefore, that those to whom it may be appropriately directed, owe some duty to the public, and are under obligation to perform it; and for the enforcement of which there is no other specific legal remedy.

In practice, the party seeking such a remedy presents to the court a *primâ facie* case, entitling him to the writ, by way of suggestion. This being in proper form and sufficient in substance, an alternative *mandamus* may be awarded upon it, reciting the complaint of the relator and his demand for redress, and commanding the party to whom it is directed, either to obey it, or return his reasons for not so doing. This alternative is what gives the denomination of "alternative *mandamus*" to the first writ.

The establishment of a duty and the obligation to perform it, is upon the plaintiff to show, and this is considered as done, *primâ facie,* when the court awards the writ. The respondent, upon service of it, is bound either to obey, or show that the plaintiff has no right to demand obedience, or that no duty exists which he can be compelled to perform. Whenever this is not accomplished by a demurrer, or by a general traverse of the facts set forth in the writ, it is generally done by matters averred in the return by way of confession and avoidance. In which case the facts relied on to justify the refusal to obey the mandate of the writ, must be clearly and specifically set forth with sufficient certainty, and not argumentatively, inferentially, or evasively, so that the court may see at once that such facts, if established or admitted, are sufficient as the alternative for obedience to the writ: Tap. on Man. 347, *et passim,* Commonwealth *ex rel.* Thomas *v.* The Commissioners of Allegheny County, 8 Casey 218; The Commonwealth *ex rel.* Hamilton *v.* The Select and Common Councils of the City of Pittsburgh, 10 Casey 496.

In the case in hand, the relator sets forth a title to a bond or certificate of loan of $1000, claimed to have been issued by the commissioners of the county of Allegheny, in the name of the county, and avers it to be one of a number issued by that county in payment of subscriptions to stock in the Pittsburgh and Connellsville Railroad Company, which, by certain Acts of Assembly, therein referred to, it is also alleged they were authorized to make and pay for in the bonds and certificates referred to, and

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

that the respondents were bound to make provision for the payment of the interest on the same, semi-annually, until the principal should fall due, with a further averment of neglect and refusal so to do. This is in substance the relator's case; and if the respondents cannot in law successfully gainsay his title to the redress demanded, or in some other legal way defeat the remedy invoked, a peremptory *mandamus* must issue. And as that process is not in this instance adapted to, or intended to effect any purpose but that of enforcing the performance of the alleged duty of making provision for the payment of the interest on the bonds so issued, and as that duty is not divisible, it can only be satisfied by performance to the extent of the duty imposed, which will be by making provision for the payment of interest on the whole amount of the bonds mentioned in the writ, of which the relator is the holder of one, and which, so far as to call for the duty claimed, may stand as the representative of all the rest. The duty and obligation to perform it, if established as to the bond of the relator, establishes at least a *primâ facie* case as to all the others issued at the same time, under the same authority, and for the same purposes, and *primâ facie* equally entitled to the same meed of justice. The right of individual holders to demand any portion of the money claimed to be raised, is not determined in this proceeding. The only point is, the question of obligation and duty to provide for the payment of interest as enjoined by law.

The respondents in their return admit the incorporation of the Pittsburgh and Connellsville Railroad Company, the existence of an Act of Assembly authorizing the county of Allegheny to subscribe to the stock thereof, the actual subscription by the commissioners to the extent of $750,000 (fifteen thousand shares), and the issuance of bonds or certificates of loan to the company in payment of the subscription, but rely on certain defences, to be noticed hereafter, to relieve them from obedience to the writ. This then is what may be called pleading by way of confession and avoidance; and, so far as this is the nature of the return, they place themselves in this position: that facts thus pleaded, being the presentation of a new case by way of defence, must be averred with certainty and positively, not argumentatively, inferentially, or evasively. We will now test this return by the requirements of the law in *mandamus* cases.

The return in one sense is single, although it contains many allegations, to which the relator demurred generally. Everything therefore that is well and sufficiently pleaded or returned, is admitted by the demurrer. Inferences from facts—arguments and conclusions are not.

With these views, deemed necessary to a proper outset in the investigation, we shall notice such portions of the return as have

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

not been passed upon in the cases cited (*supra*); and for convenience I may perhaps denominate the separate averments of the return as pleas, which, however, they are only by analogy.

The first matter interposed by the respondents in their return is neither by way of confession and avoidance, nor by general traverse, but may be regarded as a plea to the jurisdiction of the court. We decided in Thomas's Case, and again in Hamilton *v.* The Councils, that our authority to issue such process as this was not circumscribed by the districts assigned to the court by the legislature, but that it extended throughout the state, without regard to the district in which the court might be in session at the moment of awarding it. The Constitution having imposed no other than the territorial limits of the state as the limit of jurisdiction of the court, although the legislature might well appoint districts in which to hold terms, for the convenience of parties, it is hardly necessary to say, that they possessed no power to impair the efficiency of the court by limitations not imposed by the Constitution. But I dismiss this portion of the return as insufficient, as is shown in the decision referred to, and Middleton's Case, decided at this term.

The next matter contained in the return is that the railroad company did not, within five years after the passage of the Act of 1843, which extended the original period for commencing the work, in good faith commence the construction of the road; but by a vote of the stockholders, taken under the provisions of an Act of Assembly of the 15th of March 1847, abandoned the project of building the road, and directed the surrender of the charter, and that instalments paid be refunded to such as might desire the same.

All this portion of the return, the substance of which we have given, is obnoxious to the objection of want of certainty in pleading in *mandamus* proceedings. The facts to show want of "good faith in" commencing the work, should have been set out. Instead of that we have only the respondents' inference from facts not exhibited, that there was bad faith in the particular alleged. This was an inference for the court to draw, from the facts; they cannot draw it from the inference of the party; and there is nothing else from which to draw it; for the facts constituting want of good faith, if there be such, are not averred. As therefore it was not well pleaded, it is not admitted by the demurrer: Thomas's Case, 8 Casey 218.

So with the other allegations in this portion of the return. Did the vote alluded to carry a resolution to abandon the work, or is that the inference of the respondents only? Was there a direction to surrender the charter only, or was it surrendered in fact? Did the stockholders, all or any of them, receive their instalments paid in? "Certainty, to a certain intent in general,"

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

is all that is required; the meaning of which is that the matter alleged must be certain without reference to supposed facts which do not appear. Tap: on Man. 354; Thomas *v.* The Commissioners, *supra.* But that requirement is wanting here.

The conclusions may be just inferences or not, as a matter of belief in proportion to our faith in the accuracy of those who make them; but these are not facts from which a court can judicially determine them to be so of themselves, and therefore are not sufficient as a return.

But again, this return is overthrown by the Act of April 15th 1853, referred to and relied on by the relator as authority to the county of Allegheny to borrow money to pay for subscriptions which might be made to the stock of the company, and therefore a legislative renewal and recognition of full vitality in the charter. The legislature must have regarded the company in full existence; but whether or not, the Act was sufficient in itself to have revived the suspended animation of the company, even if that had been its condition at the time. No particular form of words is necessary to express the sovereign will if it sufficiently appears what was intended; and none other than the complete existence of the company as a corporation can be deduced from an act which fully authorized them to sell stock. And so was it regarded by the commissioners of the county of Allegheny; for within a little over six weeks after the act, they made the subscription in the name of the county to the road. Nothing was done by the county of Allegheny, or by any of its citizens, to stay the hands of the commissioners from making the subscription, or from issuing and paying over the bonds. If it were conceded that the county was not to be estopped after all this from denying the existence of the company, yet all would agree that such facts as would indubitably show that it was defunct, should be given to the court before they can be expected to say so, and throw the entire loss of the bonds on those who loaned their money on the faith of the legislature of the state, the county, and the company; but that has not been done here, and nothing equivalent thereto.

The next thing alleged is, the invalidity of the subscription on account of the non-payment of two dollars and a half per share at the time of subscribing. This non-payment is admitted by the demurrer. Is it sufficient in law?

The Act of Assembly of the 15th of April 1853, referred to by the relator in his writ, provides that the bonds or certificates of loan, to be issued by the county, may *be taken as cash* by the company. They bear date as of the time of the subscription, and as they were received instead of cash, it must be presumed they were received as cash. Thus, the entire subscription being paid, when made, it necessarily included the $2.50 per share, as well as the whole amount, and thus the objection fails.

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

The further averment in this portion of the return that the subscription was in excess of the whole capital stock of the company, is not referred to any statute for support by the respondents, but will be taken as referring to the act of incorporation and supplements thereto. In the first section of the act of incorporation, the stock was limited to 6000 shares of $100 each; but by the 16th section of the same act, the stockholders were authorized, at any annual or special meeting, to increase it to a million of dollars. The 1st section of the ;Act of 18th April 1843, changed the nominal, or par value of the shares to $50, instead of $100 each, and by the 9th section of the Act of 10th April 1846, the restriction on the limitation to increase the stock was repealed. So that now we may fairly presume, that the capital was increased to an extent sufficient to authorize the subscription. How can any other possible inference arise against the facts, that the subscription was made by the county, and was received by the company, when the power to increase is patent on the face of the Acts of Assembly, and its exercise not denied by the respondents? We also overrule this matter as insufficient.

The next alternative for non-obedience is, that the bonds are not obligatory on the county, because the authority to subscribe, if any were given, was to the county only, and not to the commissioners, who are officers giving no security for the faithful performance of their trust, and it is not to be supposed "that a power so *monstrous* should be exercised by them without the advice and consent of the people." And further, that if the power was intended to be lodged in the hands of the commissioners, there being no limit to the amount they might subscribe, it is void for uncertainty, and the subscription made by them under such circumstances was entirely unauthorized.

It is too well understood by everybody, to need the citation of authorities to prove, that all corporations, municipal or otherwise, act by and through constituted agents, and only so; and that the commissioners of a county, elected by the people, are the functional agents of the county, declared to be such by the law of the land. And when a county is authorized or required to do an act, it is quite as well understood, that it is to be performed by and through the agency of its commissioners.

It was decided in Sharpless's Case, 9 Harris 147, that an Act of Assembly authorizing a county to subscribe stock to a railroad company, and to pay for the same out of its revenues, was constitutional, and that a valid and binding subscription might be made by a county for such purposes. I will not take time now to obtrude my individual views of this decision; suffice it, that it was so decided, and to change it now, even if there were power to do so, after millions upon millions have been invested

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

on the faith of it, would badly square with public good faith, and be ruinous to thousands who have vested their all upon it.

While I fully agree to the impolicy and danger of trusting alone to the discretion of the county commissioners, as to the amount they may subscribe to any company, or as to their subscribing at all, yet that they may do so, is certainly within the sanction of the decision referred to, and the constitutional right in the legislature to confer, and the authorities of the county to exercise, the power, is not dependent upon who may be appointed to advise with them, or whether anybody is or is not so appointed. That decision affirmed that the legislature could authorize the commissioners to subscribe. So that we cannot now sanction the validity of the respondents' position, that the commissioners could not exercise the power to subscribe in the absence of a prescribed limitation, and without advisers, and that, therefore, the subscription was unauthorized.

The further averment and charge contained in this division of the return, that the commissioners exercised the power to subscribe under the secret influence and representations of the officers of the company, are insufficient for want of certainty. As this is by way of avoidance of the act of the commissioners, certainty is necessary to give effect to it. Whether the charge is predicated of opinions, belief, or of facts, is not shown, and is therefore not sufficient.

Nor do we think that the succeeding plea is sustained. The Act of 1843 authorized subscriptions by certain counties to be made as "fully as any individual could do," without prescribing more precisely the terms. But by the 5th section of the Act of April 18th 1843, counties subscribing are authorized to borrow money to pay for such subscriptions. We have decided that bonds or certificates of loan issued by a municipal corporation, is an ordinary and appropriate mode of borrowing money, and the Act of 1853 expressly authorized the issue of such securities. The subscriptions were accordingly made, and the bonds issued. Thus was a lawful debt incurred by the county, and as no other than the ordinary mode of extinguishing it, or of paying the interest thereon, was provided, it follows of course, that the ordinary mode of raising the means must be resorted to, namely, to provide for it in the annual assessment of taxes for county purposes. This portion of the return is also insufficient.

The next portion of the return avers that if any subscription was made by the commissioners, a single bond was delivered in payment of the whole amount; and that this exhausted the power of the commissioners over the subject, and they could not afterwards substitute smaller ones in lieu of the larger.

The averment is hypothetical; that "if any subscription was made." This at once condemns it as a plea. It wants positive-

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

ness and certainty. How can a legal inference be drawn from premises not asserted? For the purpose of arriving at definite, legal conclusions, facts are pleaded; none such can be arrived at, from a hypothetical or supposed state of things.

But independently of this objection to the return, is it possible that such a narrow and contracted technicality can, in the name of justice, be sustained, to defeat innocent and *bonâ fide* holders of bonds, issued in negotiable form, to give them a greater marketable value by seeming to dispense with the necessity of all inquiry in regard to the regularity of their execution? The day for such a defence has gone by, if it ever existed, and justice demands a conscionable defence to set aside obligations solemnly entered into. This is not conscionable, and it is neither a legal nor an equitable plea. No court would hold a party bound to make any inquiry after such a matter, for there is nothing to suggest inquiry; and they would hold not only the county bound by the regularity asserted in the fact of delivering the bond in the form adopted, and estop it from denying it, but they would further hold that the power of the commissioners was not exhausted until the act of subscription was completed between the county and railroad. The evidence of its completion on the part of the county, was the delivery of the bonds; and of the company, its receipt of them and the delivery of the stock. It is impossible that this evidence of completeness shall be set aside by some anterior temporary arrangements, for the convenience of all parties. Objections of this nature were held in Thomas *v.* Commissioners insufficient.

Succeeding this is an allegation, on information and belief, that the bonds issued to the company, so far as they have been sold, were sold below par, and in violation of the Act of 18th of April 1853. This plea wants positiveness and certainty. It is not alleged that the fact is true that they were so sold, nor that the bond of the relator was so sold, nor that the company sold them below par. This, it is true, may be inferred to be what is intended; but this is defective pleading. But if this matter were well pleaded, and held to be admitted by the demurrer, which I do not; yet as a return, it was carefully considered in Thomas's Case, and pronounced insufficient, and we adhere to that opinion, for the reasons there set forth.

The next matter alleged was determined to be insufficiently pleaded in Hamilton *v.* The Councils of the City of Pittsburgh, 10 Casey 496. It is in substance, after being stripped of accompanying deprecatory matter, that the bond of the relator and those of the "unnamed" parties for whom he proposes to speak, were not transferred in conformity to law.

The rule has often been adverted to in this opinion, that facts, the predicate of conclusions, must be set forth, and not the con-

clusions merely. Want of conformity to law in the transfer is here averred. This is evidently a conclusion from facts. Why are not the facts, from which the conclusions are drawn, averred? They either exist or do not exist. If they exist, they should be averred, so that the court might determine whether the conclusions were just or not; if they do not exist, it is obvious the conclusions are good for nothing. We see that the bonds in form pass by delivery. If any other requisites were essential to transfer them, it should have been stated.

Following this is a denial, that the bond mentioned in the relator's writ was sold or transferred by the railroad company, in conformity with the Acts of the 2d and 27th March 1855, and that any resolution was passed by the commissioners *and* recorded in the minutes of their proceeding, determining the lowest price at which the company might sell them; but that, *if any* such resolution was procured to be passed by the company, it was done secretly, and without any registry thereof, and not in such a manner as to give notice to the public, or to their (the commissioners') successors; and that many of said bonds were sold and transferred before the passage of the last-mentioned acts, below par, in open disregard of the provisions of the said Acts of Assembly, under which, it is alleged, they were issued. All this is one plea; it is undivided by paragraph or period. The first branch, if we comprehend it, is intended as a denial of the legality of the transfers by the company, as being in conformity with the Acts of Assembly mentioned, for the reason that the resolutions fixing the rate at which the bonds might be sold, were not *recorded* in such manner as to give notice, &c. And further, if such resolutions were procured, it was done secretly. This evidently places the illegality of the sale and transfer upon the fact of a want of a proper entry of the resolutions in the minutes of the board of commissioners. There is no prescribed publicity required in the passage of such resolutions that I am aware of; and whether the act of doing it was very public or very private, it seems to me is a matter of indifference, as it is not alleged that privacy was part and parcel of a corrupt scheme to procure the passage of the resolutions. It is not so charged. That resolutions, authorizing a sale below par, were passed on the 5th of April 1855, is shown by a certified copy filed with the suggestion in this case; and this accounts for the narrow ground assumed to impeach the regularity of the transfer; namely, that they were not properly *recorded*. I think the demurrer admits this. But what then? Are the holders of bonds to be defeated by the negligence or error of the commissioners in the performance of their duty? There is nothing on the face of the bonds to induce a suspicion that all the supposed requisites had not been performed. The contract contained in the bonds was with

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

the bearer—with all and any who might purchase them. They passed simply by delivery. Under such circumstances, is it easy to entertain the honesty of the position, that, notwithstanding the form was such as to invite purchasers to invest their money in them, that still they were liable to be defeated and rendered worthless by omissions not appearing or to be presumed in official action in their creation? Such a position sustained, would be an effectual trap to snare the most vigilant.

The understanding may be said to be universal, that securities, in the form of these bonds, payable to bearer, can only be defeated by notice of such facts as would render them invalid. There must be notice, or its equivalent, for the form itself is a contract that the obligors mean to make no defence, at least on account of acts and omissions of their own; and that the securities may be taken without inquiry as to this. The general authority to create the bonds is surely all that a purchaser need look to, together with the performance of such other matters as may appear by the bonds themselves to be requisites. If these bonds be not negotiable, according to the law merchant, as has been held, still it has never been held, that the obligors may be permitted to allege their own omissions to defeat their contract. They have chosen to say in effect, under a law authorizing them to choose the form of their obligation, "we will pay to any holder, whoever he may be, or wherever the purchase may be made, in Europe or in America, these bonds, and interest according to their tenor, and we pledge the *faith, credit, and property of the county* therefor." This is the substance of the undertaking, and we cannot agree to interpolate the implication that this was said with a mental reservation, that the promise was only to be good if the obligors have performed their duty rightly. This is not implied in the form, nor is it implied in the character of the officers executing the obligation. It may be true, as a general rule, that corporations, municipal perhaps, are not estopped by the acts of their agents; still I apprehend it is not so universal as to be without limit or exception; if it were so, it would be contrary to good morals, and the first principles of honesty; for it would permit the corporation to claim and hold the benefit of its contracts, and escape the burthen of paying the consideration. In short, to allow a party to take advantage of his own wrong.

Whatever may be said as to the invalidity of acts of officers and agents *outside* of their authority, is wide of the mark, when attempted to be applied to defective execution within the sphere of authority. The one may be void, but every principle of justice, as every presumption, forbids such a conclusion in the other case. To hold both to rest on the same foundation, would, so far as public officers are concerned, destroy the maxim of "*omnia*

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

*præsumuntur rite acta esse,*" and require persons dealing with such to disregard official oaths and obligations, as well as the asserted fitness contained in the fact of their selection by the people, and to look to every act, or be the loser in default thereof, if anything should be irregular. Public business could never be done under such a system. There must be faith in public servants within the scope of their authority, or public business must stop. For defective execution the public, whose servants they are, must suffer, not innocent parties. In substance we decided this in Thomas *v.* The Commissioners, 8 Casey 218. See also the concurring opinion of the Chief Justice. In Doe *v.* Horne, 43 E. C. L. 964, Lord Denman, C. J., said: "Public trustees may be estopped by a recital from alleging against their mortgage of tolls, that they had granted a prior mortgage of them." Starkie's Ev., last ed. in note 416. The rule therein asserted is the rule of good faith and common honesty. A different one would destroy every state and municipal obligation in the country. The non-recording of the resolutions on the minutes of the board is not an impeachment of the validity of the bonds.

The further allegation in this division of the return, that many of said bonds were sold and transferred before the passage of the Acts of 2d and 27th March 1855, is entirely too vague. It does not necessarily refer to and include the relator's bond, and need not be further noticed. As to the other bonds it is equally vague. It is not asserted what number or amount of them were so transferred, or wherein consisted the defect.

The next matter has been decided to be insufficient. At most the endorsement on the bonds by the company, was but a guarantee of the payment of the interest by the county. This surely will not prevent the holder of the bond from looking to the county, the principal debtor in the first instance, whose promise he holds, insteads of the guarantor. There is nothing in this.

The next averment possesses none of the requisites of a plea or return in *mandamus.* It is a denial by way of *protestando,* that as the respondents are but temporary trustees of the people, they do not know whether the relator is a *bonâ fide* holder of bonds or not, and therefore deny that he is, and pray that he may be holden to strict proof. This *is* a tender of no issue in law or fact, and we need not waste time with it.

The next matter is, an averment that the bonds of the other holders were not transferred according to law, and that a large portion of them have been hypothecated, as a security for loans by the company, at less than their par value, and that other large amounts thereof were wrongfully paid out by the president on his own individual indebtedness; and that a still larger portion is yet in the possession of the company, or has been sold at

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

a heavy discount since the failure of the company to pay interest, and of which several matters and things the holders had notice.

Now what bonds were thus transferred and hypothecated? No one can tell. The demurrer does not admit what is not asserted with sufficient certainty so as to be the foundation of judicial action. No court could say how many of those bonds were disposed of as stated, and hence the return is defective on account of its vagueness. If any portion remained in the possession of the company, why did not the county take measures to restrain them, by enjoining the company from negotiating them, and thus save themselves as well as innocent parties from wrong? Good faith would have required this rather than silence and acquiescence, and subsequent repudiation. But in regard to the manner in which the matters in this portion of the return are presented, they are not to be taken as admitted by the demurrer, for the reason that they are not well and sufficiently pleaded.

The next averment is the pendency of sundry actions in the District Court of the county of Allegheny by the holders of other bonds, in which it is alleged that the county has taken full defence.

This does not touch the relator's case. But if this had been possible, by a sufficient plea, it is a novel way of pleading the pendency of an action or actions, to set out neither the names of the parties, cause of action, nor anything upon which a court might judicially determine the fact of pendency or not, or that the cause of action was the same. Such looseness is condemned by all rules of practice.

The three several matters following this have been passed upon, so far as they were deemed material in the two cases on this bond question determined in this court, and overruled as defences. They are in substance:—1. That the respondents are not called upon to answer parties not named, and is accompanied by an interrogatory whether there is not a misjoinder in introducing in this case the fact of the existence of other bonds, and in claiming the performance of the duty of providing for the payment of interest of them, as well as on that held by the relator. We have adverted to this in another place. That this was proper on part of the relator, see also Hamilton *v.* The Councils, and Thomas *v.* The Commissioners. 2. That the bonds being under seal, are open to all legal defences to which they were subject in original hands, and that the holders thereof are affected with notice of any defects in their execution, by reason of the references therein to the laws under which they were issued. But the references to the statutes is not notice that there was defective performance under them. This point, however, we have discussed elsewhere, and determined against the respondents on the autho-

1 WR.—19

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

rity of the cases last cited, and also of Maddox *v.* Graham, Sup. Court of Kentucky, 6 Am. Law Reg. 747.    3. That there is a specific legal remedy, that is to say, by action or suit. We know of no form of action against the commissioners which would be a specific remedy to compel them to assess taxes necessary to pay interest on their bonds, or, in other words, to enforce the performance of the legal duty to provide for the interest. That *mandamus* is a proper remedy in such cases has been decided in the cases above referred to.

In the next place, it is averred that there is no authority to levy a tax for the payment of the interest by the county. We have already treated of this, and said that the authority to create the debt implies an obligation to pay it, and where no special mode of doing so is provided, it is also implied that it is to be done in the ordinary way—by the levy and collection of taxes. This plea is insufficient.

Again: it is averred that the commissioners cannot in one year exceed one per cent. on the adjusted valuation for county purposes, and that as other proceedings, similar in purpose to the present, are pending to coerce a provision for the payment of interest on two millions of dollars, or thereabouts; this, with the assessment for ordinary purposes, will greatly exceed the limit of one per cent.—and that they believe that one per cent. will be required to meet the ordinary wants of the county. This plea is uncertain and contingent, and is not good. It is not averred that in obedience to any proceedings against them, or otherwise, they have determined on and directed the levy of a tax to the extent of their authority, but only that they may be called on to do so; and inasmuch as they may be called on to go further than they have authority, they will not consent to assess any tax for the payment of any interest. Had they averred a resolution or determination to levy to the extent of their authority, quite another question would have been presented. But I will not anticipate it. Nor is the asseveration of belief that one cent on the dollar will be required for ordinary purposes, sufficient. Facts upon which that belief was founded should have been set forth, so that the court might judge whether it was well founded or not.

It may be possible that one cent on the dollar might be required for ordinary purposes under existing valuations, but if it had been supposed that as a plea this would be sufficient, it should have been averred. It is within very common observation, that the adjusted valuation of taxable property in Allegheny county, as also in many other counties, is immensely below the real value. Everybody knows this, and thus a rate may be high, when in fact, if assessed on a fair valuation, it would be very low. Apparent high rates on low valuations are always unjust to the

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

public, and create discontent, when in fact the burthen is much more apparent than real.   But we predicate nothing of this in arriving at conclusions.

The matter next following in regard to the discretion of the commissioners in assessing a tax, and their *quasi* judicial duties in respect to it, is insufficient, and has been so held in both the cases already decided.

So, too, as to the necessity of a demand of interest before instituting proceedings.   The relator sets forth the equivalent of this in charging a refusal to provide for its payment, and the facts to establish it, viz.: the assessment of it by one board of commissioners in 1857, and its countermand not long afterwards. These facts are not denied by the respondents, but, on the contrary, they are justified by them as done in " obedience to the express wishes of the people."   This was predetermined refusal, and, standing in this position always afterwards, of what avail would a demand have been ?   Acts and declarations amounting to a refusal, and showing that such would have followed a demand, would certainly dispense with, because equivalent to, a demand.   The law does not exact the performance of vain things, and it would have been idle enough in the face of such acts to have made a demand.   If the commissioners had shown that it would have been effectual, it is not probable that the plaintiff would have taken much by his writ.   This point, however, was decided against the respondents in Hamilton *v.* The Councils, and we reiterate it here.

The next matter of the return is also *res adjudicata :* Hamilton *v.* The Councils.   It is that no power existed in the county to subscribe for stocks, and that none was " conferred by the inhabitants of said county, or any of the non-resident freeholders and proprietors of lands situate therein, upon the commissioners to subscribe to the capital stock of the said company."   This may be true in one sense, in another it is not; for as the " inhabitants and non-residents" did not possess legislative power, it certainly could not be conferred directly by them, but being conferred by the legislature, it was of course conferred by the representatives of the inhabitants and non-residents of the county, the only constitutional power capable of doing so, as known to our institutions ; the immediate representatives of the county pressing for it in the name of their constituents.   The constitutionality of the act was determined in Sharpless's Case, 9 Harris 147, and Thomas's and Hamilton's Cases since.

The last matter to be determined is the interposition of a principle of law by the respondents.   It is in substance that the subscription was made solely in obedience to the legislative mandate, and not enforceable as a contract of the county.   And

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

further, that the exercise of the taxing power invoked by the relator, is an act of sovereignty resting in the will of the respondents, and cannot be coerced—in short, that the commissioners are *imperium in imperio.* But, in the cases so often referred to against the city and county, it has been determined, that the duty to assess a tax is enforceable, and that *mandamus* is the appropriate remedy; and consequently that the commissioners and councils are not sovereign in this behalf. We are satisfied with those decisions, and with the doctrine "*stare decisis.*"

Upon a careful review of the facts of this return and the arguments in support of it, we must adjudge it insufficient. Neither in form nor in substance is it sufficient to prevent a peremptory *mandamus* from issuing to the respondents, commanding them to make provision, by the assessment of a sufficient tax, to pay the interest on the bonds of the county, issued in payment of stock to the Pittsburgh and Connellsville Railroad Company, amounting to the sum of $750,000. Judgment must, therefore, be entered upon the demurrer against the respondents, and a peremptory *mandamus* awarded.

And now, to wit, November 19th 1860 : This cause having come on to be heard at the last term of this court at Pittsburgh, was fully argued by counsel; whereupon, after due and mature consideration thereon had, and it appearing that the said return by the defendants therein made to the alternative writ, is altogether insufficient, it is now ordered and adjudged, that judgment be entered upon the demurrer for the Commonwealth, and that the defendants and their successors in office be, and they are hereby commanded, at their next annual meeting for estimating the probable expenses of said county, to make full and ample provision for the payment of the interest now due, or which shall at that time remain due, and that which shall become due thereon, within the year next ensuing said meeting of said county commissioners, on the bonds, or certificates of loan set forth, or referred to in the writ of the relator, to wit : the bonds of the county of Allegheny, issued in payment of the subscription of $750,000 of said county of Allegheny to the stock of the Pittsburgh and Connellsville Railroad Company, according to the tenor thereof, by the assessment and collection of such taxes as may be necessary therefor; and for that purpose to issue their proper warrants to the several collectors of county rates and levies of the said county, for the collection of same, as in and by law

[Commonwealth *ex rel.* Armstrong *v.* Commissioners of Allegheny Co.]

and the several Acts of Assembly in such cases made and provided they are authorized and required to do, and that the costs be paid by the said respondents, the commissioners aforesaid.

LOWRIE, C. J., dissented.