NEWTON FLAGG *et al.*, Respondents, *v.* THE MAYOR, &C., OF THE CITY OF PALMYRA, Appellants.

*Corporations, Municipal—Bonds.*—It will be presumed that the bonds of a municipal corporation, issued in apparent compliance with the law authorizing the issue, have been actually issued in conformity with the law, especially in the hands of *bona fide* holders. The *bona fide* holders will be held to a knowledge of the law authorizing the issue of bonds by the town, but they will not be held, in the absence of actual notice, to inquire into the fulfilment of all the formal prerequisites to the issue. The issuing of the bonds authorizes the receiver or purchaser to suppose all the things required by law to have been done in the time, form and substance required by law.

*Corporations, Municipal—Bonds.*—The act authorizing the issue of bonds by the City of Palmyra, (Acts, 1857, p. 431,) provided that the bonds issued in payment of the subscription to a railroad should be "payable twenty years after date," &c. On the face of the bonds it appeared that the ordinance of the city, directing a subscription to the stock, was passed after the date of the bonds, showing that the bonds had been antedated. Held, to be no substantial objection to the bonds.

*Mandamus—Municipal Corporations.*—A mandamus will issue to a municipal corporation, requiring it to levy taxes for the purpose of paying interest upon bonds issued by it in payment of its subscription to the stock of a railroad company.

*Appeal from Marion Circuit Court.*

*Glover* and *Anderson & Davies*, for appellants.

I. The 43d section of the 6th article of "An act to incorporate the City of Palmyra," approved November 23, 1855, (Acts Adj'd Session, 1855, p. 186,) provides that " all ordinances passed by the city council shall, within one month after they shall have been passed, be published in some newspaper published in the city, and shall not be in force till so published."

The defendants denied that any valid ordinance or law of the city authorized the subscription. The burthen was on plaintiffs to show some law or ordinance in force to sustain the subscription. But an ordinance was shown which had not been published when the subscription was made under it. (23 Mo. 484.)

By section 4 of article 11 of "An act to incorporate the City

of Palmyra," approved November 23, 1855, (Adj'd Sess. Acts, p. 191,) it is declared that all ordinances and resolutions of the board of trustees of the Town of Palmyra shall remain in force until the same shall be repealed by the city council hereby created.

By one of these ordinances of the old town, three weeks' public notice was to be given of the time and place of holding elections. But no notice was given of the election held on the proposition to subscribe fifty thousand dollars of stock to the Quincy and Palmyra Railroad until the 9th day of April, 1857, the election having come off on the 13th of the same month.

The officers of corporations are special agents. They are under such limited authority as law and evidence give. In so far they may bind the corporation, no further. (2 Cranch, 167; 19 Peck, 511; 13 B. Monroe, 563; 16 Shepley, 29; 1 Hill, 551; 14 Verm. 311; 3 Day, 495; 18 Mo. 227; 25 Mo. 503; St. Louis City v. Gorman, 29 Mo. 593.)

II. The bonds and coupons are void because they were antedated, in violation of the spirit and letter of the "Act to amend an act entitled 'An act to incorporate the City of Palmyra,'" approved November 23, 1855. (Sess. Acts, 1857, p. 431.)

It is plain that until the 20th day of July, 1857, no liability was in any event imposed on the city in this matter.

If the election was valid, no rights accrued to the Quincy and Palmyra Railroad until a subscription was made; until then no obligation existed to be paid. The city was not bound to subscribe even after an election; they might or they might not. Yet bonds were issued dated July 1, 1857, drawing eight per cent. per annum from that day. This was not passing the bonds at par—this was not passing twenty-year bonds.

III. The finding of the court was insufficient to sustain the judgment. The defendants denied the existence of any authority for the execution of the bonds and coupons. The plaintiffs were to show this authority—how the court finds

an ordinance was passed by the city council submitting to vote the proposition to subscribe $50,000 to the Quincy and Palmyra Railroad; also appointing April 13, 1857, as the day of election. The court then finds "no notice was given by publication in the Palmyra Whig, a newspaper published weekly in said city." But was the ordinance in force when action was taken under it?

If the mayor and councilmen had no power to issue any but bonds running twenty years, and coupons attached to such bonds; if this was, as we insist, a statutory condition, and the bonds were not so issued, nothing that the mayor and city council could do afterwards would ever validate the instruments; for he who has no power to do an act, can never ratify or confirm it.

No subscription could be lawfully made by virtue of the act of November 23, 1855. (Adj'd Sess. Acts, 1855, p. 431.)

There was no proof of plaintiffs' ownership in the bonds. The attempt which has been made to sustain the bonds and coupons under the general railroad act—being "An act to authorize the formation of railroad associations and to regulate the same," approved December 13, 1855, (1 R. C. 1855, p. 404)—has totally failed, for these reasons, among others:

The act of 1857 is a repeal of the general law as to Palmyra, section three making an election a precedent condition. The whole proceedings show that they were in pursuance to the power granted by the act approved February 9, 1857, and not in pursuance to powers granted by general railroad act.

*Pratt, McCabe* and *Lipscomb*, for respondents.

I. It is submitted that the Quincy and Palmyra Railroad Company, being incorporated under the law of this State, the City Council of the City of Palmyra had power and authority to subscribe to the capital stock thereof in any sum not exceeding $100,000, and to issue the bonds of the city in payment therefor. (Acts, 1856–7, p. 431–2.)

II. The city council had this power under the general

railroad law of the State without ordering an election. (Acts, 1853, § 29, p. 135–6.)

III. If it should be contended by the appellants, that because the ordinance directing the mayor to subscribe to the capital stock of the company was not published until after the subscription was made in the stock book of the company, the subscription was therefore void, it is insisted that previous publication was not essential to the validity of the subscription. The provision of the city charter on which this idea is based can have no application to a case like this. A corporation such as the City of Palmyra is not only clothed with the power to pass laws and ordinances not inconsistent with its charter or the laws of the land, but it can also contract like natural persons, and the same laws governing contracts apply to the one as well as to the other. By the vote of the city the city council was authorized to subscribe, and in virtue of the ordinance passed on the 18th of July the mayor did subscribe.

The order on the records of the city subscribing the stock was the real subscription by the city council, and imposed the obligation on the city, and, if accepted by the company, it was obligatory upon the city, and the formal act of placing it on the books of the company conferred no additional obligation, and owed all its efficiency to the order of record. (On this point, see case of the Justices of Clark County v. Paris, Winchester & Ky. R. Turnpike Co. 11 B. Mon. 143.)

The essentials in the whole case are the call for the election, the vote under the call and direction, the canvass and inspection of the vote as pointed out by the act of the Legislature ; the subscription by the mayor being a ministerial act, and the acquisition of stock being the object of it.

These bonds were made negotiable and payable to the company or bearer. The city and the citizens were aware of this. The order for the issue of these bonds was well known, their character and terms were matter of publication and notoriety, and it is placed in plain letters on the back of each

bond that the faith of the city is irrevocably pledged to the company for their payment.

Under such a state of facts, if the charter has not been strictly complied with in every particular, can this be set up with effect against these *bona fide* holders?

By their negotiation an equity has arisen in behalf of the holders which ought to outweigh any formal objection arising from a departure from the charter.

The doctrine is not maintainable, that all who deal with a corporation must look into its charter, not only to be assured that corporate powers have been conferred upon it, but to see that everything in the exercise of a given power has been done in exact accordance with the mode provided, especially when its acts are set forth in general terms showing a compliance with the law. (On this point, see Zabriskie v. Cleveland, Columbus & Cincinnati R.R. Co. and others, and the cases there cited.)

As to the point raised below, and which may be insisted on here, viz., that the bonds were antedated, this is not deemed a point of importance. The law under which the bonds were issued required them to be made payable twenty years after their date. The bonds are dated July 1st, 1857, and are payable July 1st, 1877.

The authority to issue the bonds is derived from the vote of the citizens, and this authority existed from the 14th of April previous. At all events, the date of the bonds is evidence against the city until the contrary is shown, and there is nothing in the record showing that the bonds were not issued on the day of their date.

After the vote was taken and ascertained to be in favor of the subscription, it became the duty of the city council to subscribe the stock. The Legislature made it mandatory on the city council to subscribe, (see § 3, p. 432, of Laws of Mo. 1856-7,) and it thus became a mere ministerial duty as to the council, admitting of no hesitation or exercise of discretion. If the act of taking thus became ministerial, so it were done, though not in the exact mode pointed out by the

charter,— as the end and purpose of the law has been accomplished, there can be no objection.

It is submitted that this is no contest between equities; but that this is a case of decided equity on one side, and of decided obligation on the other. The appellees have purchased these bonds for a valuable consideration; they are entirely disconnected with the railroad company; they have made every inquiry which as prudent men they ought to have made, and as it is not doubted but that they have sought the proper remedy, their claims should prevail.

BATES, Judge, delivered the opinion of the court.

A number of questions are presented in this case, some of which are both important and difficult. Only such of them will be noticed as we think necessary for the decision of the case.

On the 9th day of February, 1857, there was approved an act passed by the General Assembly entitled "An act to amend an act entitled 'An act to incorporate the City of Palmyra,'" approved November 23, 1855, as follows:

"*Be it enacted by the General Assembly of the State of Missouri as follows:*

"§ 1. That whenever the citizens of said city are desirous that the city subscribe for stock in any railroad company which now is, or hereafter may be, organized or incorporated under any law of this State; and said city is hereby authorized to subscribe for shares to the capital stock of any such companies in any sum not exceeding one hundred thousand dollars, and to issue the bonds of the city, under the common seal, payable twenty years after date, either with or without their bearing interest, not exceeding eight per cent. per annum, payable semi-annually, with interest coupons annexed, and to deliver such bonds, in payment of such subscription, at such time or times as the city council may direct: *Provided,* that no bond shall be paid out at less than par value:

"§ 2. The city is hereby authorized to levy and collect a

special annual tax upon the property, real and personal, situated in the city, sufficient for the payment of the annual interest which may accrue on such bonds, to be levied and collected at the same time and in the same manner as the other taxes levied by the city, and to be by the city applied to the payment of said interest, and to no other purpose.

" § 3. That before any such subscription shall be made the city council shall call an election of the qualified voters of the city, to vote for or against the making of such subscription for the number of shares to be specified in the notice of the election, said election to be held on the same notice, and the votes received, counted and returned in the same manner as in the case of election of the mayor and councilmen of the city ; and if a majority of the qualified voters, voting at said election, shall be in favor of such subscription, the same shall be made by the city council, and the stock so subscribed for shall be under the control of the city council in all respects as stock owned by individuals.

" § 4. This act is hereby declared a public act, and shall take effect and be in force from and after its passage.

" Approved February 9, 1857."

The City of Palmyra did under this act subscribe stock in the Quincy and Palmyra Railroad Company, (a corporate association formed under the general railroad law,) and issued and delivered its bonds for fifty thousand dollars in payment of that subscription.

Afterward the city council refused to levy a tax upon the property in the city to pay the annual interest on said bonds and made no other provision for its payment, and also caused to be published a resolution that the bonds were null and void, and that they would in nowise be paid, nor would any provision be made for the payment of the interest thereof.

The plaintiffs who had become holders of some of the bonds, upon which several instalments of interest (represented by coupons attached to the bonds) had become due and remained unpaid and unprovided for, commenced this proceeding for a mandamus to the mayor and councilmen of

the City of Palmyra to command them to levy a tax to pay said interest.

No writ was issued, but the defendants made return as if to such writ, as follows :

"Respondents make the following additional and amended return to the writ of mandamus and rule issued in the above entitled cause :

"1. Respondents admit that one Thomas E. Thompson, mayor of the City of Palmyra, did issue certain bonds and coupons purporting to be the bonds and coupons of the City of Palmyra, to the amount of 50,000 dollars, said bonds purporting to be issued in payment of stock to the Quincy and and Palmyra Railroad Company ; but they state that said Thompson did said act without authority of said city, and without authority or any existing laws and ordinances of said city authorizing him so to do.

"2. Respondents further say, that the act of the General Assembly of the State of Missouri, passed on the 9th day of February, 1857, entitled 'An act,' &c., 'authorizing the City of Palmyra to subscribe for stock in railroads'—under the provisions of which said act, Thomas E. Thompson, mayor aforesaid, claimed authority to issue the bonds and coupons in question—requires ' that before any such subscription shall be made the city council shall call an election of the qualified voters of the city, to vote for or against the making of such subcription for the number of shares to be specified in the notice of the election, said election to be held on the same notice, and the votes received, counted and returned in the same manner as in the case of an election of the mayor and councilmen of the city; and if a majority of the qualified voters, voting at said election, shall be in favor of such subscription, the same shall be made by the city council,' &c. Respondents state that no call and notice of an election to be held for the purpose of subscribing for stock in the Quincy and Palmyra Railroad, by the citizens of Palmyra, was given as required by said act. Respondents also state that no votes cast at any election ever held in said city, relating to subscribing for

said railroad stock, were received, counted and returned by the city council, as required by said act.

"3. Respondents, further answering, say that the act aforesaid, authorizing said City of Palmyra to issue bonds in payment of railroad stock, required that said bonds should not become due and payable until twenty years from the date of their issuance; and that the bonds on which the petitioners claim the payment of the coupons were made payable within less time than twenty years from their issuance, and were antedated by and with the knowledge and consent of the said Thomas E. Thompson and said railroad company, or her agents, for the purpose of showing on their face the term of twenty years, when in fact it was less than twenty years from the day they were issued to the day when they purport to become due and payable on their face; wherefore said bonds are fraudulent and void.

"4. Respondents, further answering, state that the common council of said City of Palmyra did on the 30th of March, 1857, make and publish an ordinance of that date, under which a vote of the inhabitants of said city was taken upon a proposition to subscribe for stock to the amount of 50,000 dollars, for the purpose of building a railroad from a point on the west bank of the Mississippi river, in the State of Missouri, opposite to the city of Quincy, extending to a point within the city of Palmyra, and that the said bonds and coupons, issued by the said Thomas E. Thompson in manner and form aforesaid, were by him so issued for the purpose of aiding in the construction of said railroad between the points aforesaid, with a view to the advancement of the interest and prosperity of the said City of Palmyra, and for that consideration. But respondents state that said railroad company have failed and refused to locate and construct said railroad according to said proposition, but have located its terminus or junction with the Hannibal and St. Joseph railroad, at a great distance west of said city, and are now building the same to the prejudice of business and value of property, within the limits of said city; whereby

said railroad company obtained said bonds without any consideration, and therefore said bonds are void.

" 5. Respondents further state, that the said bonds and coupons were obtained by fraud and misrepresentation, in this, that the said company promised and agreed that they would locate and construct said railroad from a point opposite the city of Quincy, on the west bank of the Mississippi river, in the State of Missouri, to a point within the then city of Palmyra, where it was to connect with the Hannibal and St. Joseph railroad, which they have failed and refused to do; wherefore said bonds were without consideration and void.

" 6. Said respondents, further answering, deny that the said plaintiffs are the owners of said bonds and coupons. And said respondents having now answered, pray to be dismissed, &c.—Joseph W. Pryor et al., by their attorneys, Davies & Anderson."

The plaintiffs traversed the first, second, fifth and sixth points of the return, and demurred to the third and fourth. The respondents took issue upon the traverses.

The court sustained the demurrer to the third and fourth points, and tried the cause upon the issues made, and awarded a peremptory mandamus against the respondents below, from which they appealed to this court.

In the consideration of this case, we cannot disregard the fact that the bonds were created for the express purpose of being sold for money to be applied to the purposes of the railroad company.

The City of Palmyra is a subscriber of stock in an incorporated company, and in lieu of paying for that stock in money, pays its bonds with the obvious intention that the bonds so received by the railroad company shall be negotiated. Without therefore undertaking to define the exact character and incidents of the negotiability which such bonds may have, it is certainly just and proper, in the consideration of the questions which affect their validity, to treat the holders of them with great liberality, and enforce the law

against the corporation issuing them with strictness. At the same time we bear in mind that the corporation of the City of Palmyra is a mere creature of the law, capable of acting only in the mode prescribed by the law.

In this case, if the bonds have been issued by the City of Palmyra in apparent compliance with the law, and themselves give no evidence of a want of performance of the prerequisites to their issuance, and no actual notice of any such defect is traced to the bondholders, we will not hold the bondholders to be affected by a failure of the officers of the City of Palmyra to p erform all that was by the law required of them, in anticipation of and preparation for the issuing of these bonds. Being issued in apparent conformity to the law, the public (any of whom might acquire the bonds) is entitled to view them as issued in actual conformity to the law, and to suppose that all the acts required of the people and officers of the City of Palmyra, in reference to the bonds, have been duly performed.

To apply these principles to the present case, we hold the bondholders to a knowledge of all that is contained in the act of the General Assembly to incorporate the City of Palmyra, and the amendatory acts above quoted; but (in the absence of actual notice) do not hold them bound to inquire whether an election had been held as to the making of a subscription of stock in the Quincy and Palmyra Railroad Company, or as to the regularity of such an election, or the qualifications of the voters thereat, or whether the City of Palmyra had actually subscribed stock in the Quincy and Palmyra Railroad Company, or whether such subscription was made by the proper officer or officers of the City of Palmyra. The issuing of the bonds authorizes the receiver or purchaser thereof to suppose that all those things, if required by law, have been done in the time, form and substance required by law.

The act above quoted requires that the bonds shall be "under the common seal, payable twenty years after date, either with or without their bearing interest, not exceeding

eight per cent. per annum, payable semi-annually, with interest coupons annexed."

We inquire whether the bonds shown in this case fulfil these requisites. We perceive that they are under the common seal, are payable twenty years after date, and bear interest at the rate of eight per cent. per annum, payable semi-annually, for which interest coupons were annexed. We perceive, also, from a statement in the bond itself, that it was issued under an ordinance of the City of Palmyra providing for the subscription to the capital stock of the Quincy and Palmyra Railroad Company, passed on the 18th day of July, 1857, a copy of which ordinance is also endorsed upon the bond. We perceive, also, that the date of the bond is the first day of July, 1857. It thus appears on the face of the bond that it was dated at a time anterior to the ordinance under which it was issued. This is the most plausible objection to the bond, but it is only plausible. The bond complies literally with the law in being payable twenty years after date, and bearing eight per cent. interest. The objection must then be, that notwithstanding the literal compliance with the law, this is a substantial departure from the manifest intention. It does not appear to be so. Before the first of July, the subscription to the capital stock of the railroad company, and the issue of bonds to pay for it, had been authorized by the act of the General Assembly and a vote of the people of Palmyra, and it may well be presumed that the City of Palmyra was compensated for antedating the bonds a few days. Such presumption is not violent, for the General Assembly itself contemplated that bonds might be negotiated at a different rate from that expressed upon them, that is, might be sold for less or more than their par value; for it authorizes the issue of bonds which should bear no interest, which of course would have to be sold at less than their par value. It would be no substantial objection to these bonds that they had been sold for ninety cents on the dollar of the sums expressed in them, and the adding of a

few days, during which they should bear interest, is an objection of the same character.

Upon consideration of the whole case, and avowing a disposition to give no aid to persons seeking to avoid their obligations upon technical and unmeritorious grounds, we think that the judgment below was for the right party.

Judgment affirmed. Judge Bay concurs. Judge Dryden did not sit in this cause, having been of counsel in the court below.

