## SUTTON et al. v. KALKA.

No. 20823.   Opinion Filed Feb. 11, 1930.

John Embry, and Erwin & Erwin, for plaintiffs in error.

Cox & Cox and Emery A. Foster, for defendant in error.

LESTER, V. C. J. O. A. Kalka filed an action in the district court of Lincoln county, Okla., praying that a writ of mandamus issue to the members of the excise board of that county, as well as the county commissioners thereof, commanding them to make a certain levy for the fiscal year beginning July 1, 1929, for the purpose of creating a sinking fund and paying the annual interest on certain road bonds theretofore issued by the said county during the year 1927, in the sum of $1,200,000; and alleging that said plaintiff was interested in that he was owner of one of the said bonds of the denomination of $1,000.

The defendants filed an answer to the petition of the plaintiff in which it was stated that the defendants were in the course of making an adequate levy for the purpose set out in said petition, but that said defendants in making said levy intended to take into consideration certain fixed incomes from sources other than ad valorem taxes; the amount thereof from said other sources was not to be fixed at a greater amount than that which was received by the county for the previous fiscal year.

Trial was had and judgment rendered in favor of the plaintiff, from which the defendants appeal.

There are but two propositions involved on appeal. The first proposition is whether or not mandamus is a proper remedy, even though it be found that the defendants were in default in not making a sufficient and adequate levy in order to pay the annual interest and provide a sinking fund on the bonded indebtedness theretofore incurred. The second proposition is whether or not, under section 26 of article 10 of the Constitution of the state of Oklahoma, providing:

."That any county, city, town, township, school district, or other political corporation, or subdivision of the state, incurring any indebtedness, requiring the assent of the voters as aforesaid, shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof within 25 years from the time of contracting the same"

—constitutes a tax to be levied only upon real and personal property of the county on an ad valorem basis.

On the first proposition, we think the overwhelming weight of the authority is to the effect that in case tax authorities fail and refuse to provide a levy for the purpose of providing funds for the payment of outstanding legal obligations of a municipality, mandamus will lie to compel the performance of that duty.

In section 1511, Dillon on Municipal Corporations (5th Ed.) it is stated:

"Where a municipal corporation is authorized by the Legislature to create a debt of a specific character, to borrow money to pay it, and to make provisions for the payment of the principal and interest of the money so borrowed, by the assessment and collection of such taxes as may be necessary, a mandamus is the appropriate remedy of the creditor to compel the corporation to levy and collect the taxes to pay such debt or the interest thereon.

"Von Hoffman v. Quincy, 4 Wall. (U. S.) 535; Walkley v. Muscatine, 6 Wall. (U. S.) 481; Commonwealth v. Pittsburgh, 34 Pa. 496; State v. Clinton County, 6 Ohio St. 280; Flagg v. Palmyra, 33 Mo. 440; Commonwealth v. Allegheny County, 37 Pa. 277; Maddox v. Graham, 2 Met. (Ky.) 56; Rock Island County v. United States, 4 Wall. (U. S.) 435; Riggs v. Johnson County, 6 Wall. (U. S.) 166; Knox County v. Aspinwall, 24 How. (U. S.) 384; Davenport v. Lord, 9 Wall. (U. S.) 409; Washington County v. Durant, Id. 415 (U. S.). Text approved Brown v. Gates, 15 W. Va. 131; Limestone County v. Rather, 48 Ala. 433."

Regarding the question as to whether an excise board may take into consideration sources of income other than that based upon an ad valorem in fixing the rate of levy for an ensuing fiscal year under section 26 of article 10 of the Constitution, in this case neither party cites a single case tending to sustain their respective contentions.

In section 211, Dillon on Municipal Corporations (5th Ed.) it is said:

"Closely allied to the constitutional limitations upon the amount of indebtedness which may be incurred, and frequently forming part thereof, are requirements that at the time when indebtedness is incurred provision shall be made for the levy or collection of an annual tax sufficient to pay the interest and principal. Sometimes the direction is that the tax levied shall be sufficient to pay the interest and create a sinking fund. These provisions, though comparatively recent, are now found in the Constitutions of many of the states. The general construction put upon these provisions is that they are qualifications and restrictions upon the power or mode of exercising the power of municipalities to become indebted; that no indebtedness can be incurred without a substantial compliance with their requirements, and that contracts made, and bonds and other evidences of indebtedness issued, in violation of their terms are invalid, and, if there be no estoppel, cannot be enforced. * * *.

"The Constitution contemplated that there should be no uncertainty, and the amount to be raised by tax must be sufficient in itself to pay off the entire amount of the bonds at the end of the prescribed period. But this does not mean that the municipal authorities are compelled to collect the tax if, when the time arrives for the payment of any part of the debt, either principal or interest, there are funds in the treasury derived from other sources which may be lawfully applied to the payment of the debt. The municipal authorities must make provision for the levy and collection of an annual tax in the event the collection of the tax is necessary for the purpose of paying the debt, but it was not intended that they should be compelled to collect the tax although levied, when there are funds in the treasury derived from other sources which can be lawfully appropriated for the purpose of complying with the provisions of the Constitution."

In the case of Epping v. Columbus, 117 Ga. 263, it is said:

"The Constitution thus requires a municipal corporation to make provision for the payment of any debt it may incur by providing for the assessment and collection of an annual tax sufficient in amount to discharge the principal and interest of the debt. This does not, however, mean that the municipal authorities are compelled to collect this tax, if when the time arrives for payment of any part of the debt, either principal or interest, there are funds in the treasury derived from other sources which may be lawfully applied to the payment of the debt. The municipal authorities must make provision for the levy and collection of an annual tax in the event the collection of the tax is necesary for the purpose of paying the debt; but we do not think it was the intention of the framers of the Constitution that the municipal authorities should be compelled to collect the tax, although levied, when there were funds in the treasury de-

rived from other sources which could be lawfully appropriated to the payment of the municipal indebtedness."

The bonds in the instant case were duly authorized to be issued by the qualified electors of Lincoln county, Okla., at an election held therein on the 29th day of March, 1927. Prior to said election the Legislature of this state adopted Senate Bill No. 185, which is to be found in chapter 125, Session Laws 1927, and is as follows:

"Section 1. That in Lincoln county, Okla., the income and revenue derived by such county from automobile license tax, and from the gasoline excise tax and from the gross production tax, in so far as may be necessary, are to be used in the payment of the interest on, and the principal of bonds issued by any such county for the construction of hard-surfaced roads in such county."

It appears that the contention herein is based upon the fact that the excise board of Lincoln county was considering the amount received from these sources the previous fiscal year as being a basis upon which to estimate the sources of income for the fiscal year 1929, and after considering the amount received from these sources, to fix an ad valorem tax on property in Lincoln county sufficient to meet the annual interest on the bonds and to provide for the sinking fund therein.

The constitutionality of the last-named act of the Legislature is not here attacked.

In the case of the United States ex rel. Alfred Huidekoper v. County Court of Macon County, 25 L. Ed. (U. S.) 331, it is stated:

"Every purchaser of a municipal bond is chargeable with notice of the statute under which the bond was issued."

In the case of County Court of Cape Girardeau County, Mo., and William Hager et al. v. United States ex rel. John T. Hill, 30 L. Ed. (U. S.) 73, it is said:

"The township having legally incurred an obligation to pay the bonds in question, it was competent for the Legislature, at any time, to make provision for its being met by taxation upon any kind of property within the township that was subject to taxation for public purposes."

Section 9699, C. O. S. 1921, provides in part:

"When the excise board shall have ascertained the total assessed valuation of the property taxed ad valorem in the county and in each municipal subdivision thereof and shall have computed the total of the several items of appropriations for current expense and sinking fund purposes for the county and each municipal subdivision thereof with ten per. cent. (10%) added thereto for delinquent tax, they shall thereupon make the levies therefor, after deducting from the total so computed the amount of any surplus balance of revenue or levy, ascertained to be on hand from the previous fiscal year or years, together with the amount of the probable income of each from all sources other than ad valorem taxation, provided that in no event shall the amount of such estimated income exceed the actual collections from such source for the previous fiscal year."

It is thus seen that when an excise board has under consideration the fixing of a tax rate for the ensuing fiscal year, the said board may take into consideration the source of income other than ad valorem taxation of the ensuing fiscal year, but in measuring such other sources the actual amount received from these sources from the previous fiscal year is the sole basis to be taken into account. The excise board is not permitted to make a wild speculation as to the probable incomes from such other sources, but is given a yardstick by which to measure the income. There must not be any discrimination as between taxes that are to be provided for the purpose of paying interest and creating a sinking fund and taxes levied for the support and maintenance of the county government as provided by section 9699, supra.

In the case of Seibert v. United States, 30 L. Ed. (U. S.) 1161, it is said:

"But the contract which the relator is entitled to insist upon under the Act of March 23, 1868, is that he shall have a special tax for the payment of the principal and interest due him, to be levied from time to time 'in the same manner as county taxes.' It may be admitted that the Legislature, from time to time, notwithstanding this provision, might by subsequent legislation change the mode and the means for the assessment, levy and collection of county taxes, as in its judgment the public interests should require. Any such changes, made in view of public interest, not substantially to the prejudice of public creditors, might be considered, in respect to them, as the legal equivalent for the particular mode in force in 1868, and a fair and reasonable substitute therefor. Ordinarily, it would be true that such altered provisions would not be injurious to any private rights, for the creditor would at all times have the guaranty of as prompt and speedy a collection of a tax in satisfaction of his claim as is secured by law for the collection of the revenues of the county most important for the support of its government.

"It may, therefore, be considered as a

most material and important part of the contract contained in the second section of the Act of March 23, 1868, not perhaps, that the creditor shall always have a right to have taxes for his benefit collected in the same manner in which county taxes were collectible at that date, but that he shall at least always have the right to a special tax to be levied and collected in the same manner as county taxes at the same time may be levied and collected. In other words, the essential part and value of the contract is that he shall always have a special tax to be collected in a manner as prompt and efficacious as that which shall, at the time when he applies for it, be provided by law for the collection of the general revenue of the county. His contract is not only that he shall have as good a remedy as that provided by the terms of the contract when made, but that his remedy shall be by means of a tax, in reference to which the levy and collection shall be as efficacious as the state provides for the benefit of its counties, without any discrimination against him."

Section 26 of article 10, supra, provides that where a subdivision of the state incurs an indebtedness requiring assent of the voters, it shall, before or at the time of doing so, provide for the collection of an annual tax sufficient to pay the annual interest and accrual to the sinking fund for the payment of the principal thereof within twenty-five years from the time of contracting the same.

It is here shown (Record, page 17) that the authorities of Lincoln county adopted the following provision in keeping with section 26, art. 10, supra:

"Section 4. That beginning with the year 1927, a continuing annual tax sufficient to pay the interest on said bonds when due and for the purpose of providing a sinking fund with which to pay the principal of said bonds when due shall be and is hereby ordered levied upon all the taxable property of said county in addition to all other taxes, said sinking fund to be designated 'The Road Bonds of 1927 Sinking Fund.' Said tax shall be and is hereby ordered certified, levied, and extended upon the tax rolls and collected by the same officers, in the same manner and at the same time as the taxes for general purpose in each of said years are certified, levied, extended and collected: that all funds derived from said tax shall be placed in said sinking fund, which together with all interest collected on same shall be irrevocably pledged to the payment of the interest on and principal of said bonds when and as the same fall due."

Here it is clearly shown that the taxing board of Lincoln county in adopting the tax levy made necessary by section 26, art. 10,

supra, did therein adopt the general tax system then in force in Oklahoma relating to the computation and extension of taxes necessary for the support of the county government, and for the purpose of providing interest and accruals to the sinking fund, and thereby including the provisions of section 9699, supra; the last-named section providing that the excise board, in addition to an ad valorem tax, may take into consideration other sources of income not to exceed the amount received therefrom the previous fiscal year.

Under the provisions of section 26, art. 10, of the Constitution, it is impossible at the time the blanket levy is made to determine the rate of levy to be made for each ensuing year, as it is known from experience that property valuations of municipal subdivisions vary from year to year.

Under the provisions of section 26, art. 10, supra, the levy is made, but as said in the case of Epping v. Columbus, supra, the Constitution requires a municipal corporation to make provision for the payment of any debt it may incur by providing for the assessment and collection of an annual tax sufficient in amount to discharge the principal and interest of the debt, but this does not mean that the authorities are compelled to collect this tax, if when the time arrives for payment there are funds in the treasury derived from other sources which may be lawfully applied to the payment of the debt.

It is not here contended that the provisions which were being made by the excise board of Lincoln county for an annual tax for the fiscal year 1929 were not adequate to provide sufficient revenue to meet the annual interest payment and annual accrual to the sinking fund of the bonded indebtedness, and we think it sufficiently appears that a similar levy was made for the year 1928, and it was sufficient and adequate to meet the tax required on this indebtedness for that fiscal year.

The sources of revenue other than that derived from an ad valorem tax in the instant case come from a species of property that has been made exempt by the statutes of this state from being placed in the ad valorem schedule, to wit, automobiles, gasoline, and oil. These properties in Oklahoma represent in value several million dollars, and when they are lifted from an ad valorem tax basis, it places a much heavier burden upon a property tax fixed on an ad valorem basis, and unless the revenues from these properties, now represented by automobile license tax, gasoline tax, and gross production tax,

are not equitably distributed to meet the general burdens that fall upon property that is placed upon ad valorem basis, a very great tax burden will fall upon the owners of property taxed on the latter basis.

It clearly appears that the buyers of the road bonds in the instant case accepted the manner of levy of tax as contained in section 9699, supra.

The plaintiff herein fails to show that he has or will suffer any detriment or injury from the amount of levy that is believed to be adequate by the county commissioners and the excise board of Lincoln county for the fiscal year 1929.

Judgment of the district court is reversed and set aside, with directions to dismiss plaintiff's petition.

MASON, C. J., and HUNT, CLARK, RILEY, HEFNER, CULLISON, and SWINDALL, JJ., concur. ANDREWS, J., absent and not participating.

Note.—See under (1) 18 R. C. L. p. 281; R. C. L. Perm. Supp. p. 4429. See "Municipal Corporations," 44 C. J. §4222, p. 1236, n. 4; §4376, p. 1315, n. 54.