## HIDALGO COUNTY, TEX., v. JACKSON.
### No. 9447.

Circuit Court of Appeals, Fifth Circuit.

April 22, 1941.

Robert E. Kirkpatrick, of Mercedes, Tex., for appellant.

R. A. Hightower, of Brownsville, Tex., for appellee.

Before FOSTER, SIBLEY, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

On November 10, 1939, appellee E. E. Jackson, Jr., brought suit in the District Court on past due interest coupons from warrants issued for permanent improvements by Hidalgo County on November 10, 1925. The coupons sued on matured every six months from May 10, 1930, to May 10, 1939. A general judgment was prayed and an account of a fund in the hands of the County, alleged to be a trust fund, out of which payment was to be made. It was alleged that by named proceedings in court

the trust fund had been established in 1932 and then and repeatedly since to the time of suit by supplemental decrees the County had promised and agreed to maintain the trust fund and make proper disbursements to warrant holders. The answer denied any trust or promise to the plaintiff, and pleaded the four year statute of limitations as to all coupons which matured more than four years before suit. The District Court gave general judgment for the entire sum sued for, held that there was a trust created by the former court proceedings, and decreed an account of the fund and payment of plaintiff's part in it. The County appeals on the sole point of limitation.

■ About half of the coupons had matured more than four years before suit. The Texas statute, Rev.Civ.Stats. Art. 5527, limits the commencement and prosecution of suits to four years after the cause of action shall have accrued in "(1) Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing." Limitation statutes apply to coupons of public bonds and warrants, though not detached, and though the principal be not past due, since the cause of action for the interest arises at the maturity of the coupon. Amy v. Dubuque, 98 U.S. 470, 25 L.Ed. 228; 37 C.J., Limitation, § 208. This is the rule in Texas, the limitation being four years, under the statute above quoted. City of Galveston v. Loonie, 54 Tex. 517; Rockwall County v. Roberts County, 103 Tex. 406, 128 S.W. 369; Pyramid Life Ins. Co. v. Ellis County Drainage Dist., Tex.Civ.App., 136 S.W.2d 267.

■ It is provided, Rev.Civ.Stats. Art. 5539: "When an action may appear to be barred by a law of limitation, no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted in evidence to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party to be charged thereby." No acknowledgment signed by Hidalgo County since 1930 appears in this record. See Stein v. Hamman, 118 Tex. 16, 6 S.W.2d 352, 9 S.W.2d 1104. The decree in 1932 between other warrant holders and the County, and the supplementary decrees between other intervenors and the County, are all signed by the judge only, and to none of them was Jackson a party. They seem to have been consent decrees, and

in a way the judge may have thus signed for each party; but the decrees did not relate to the warrants and coupons held by Jackson. The warrants which were adjudged to be valid obligations were listed by number in the original decree, and the numbers of Jackson's warrants are omitted; and all defenses were expressly reserved as to warrants not listed. There was no acknowledgment of the validity of these. The supplementary decrees were expressly restricted to warrants brought in by the intervenors, and did not include Jackson's warrants. It may be that Jackson's warrants grew out of the same transaction as some of the others, but this inferential acknowledgment is not sufficient to toll the statute, when these warrants were, as above stated, excluded from the decrees.

■■ This is not a case of a technical trust in which limitation does not begin to run between the trustee and cestui que trust until the trust is repudiated. The former litigation, to which Jackson was not a party in person or by class representation, began in two suits on warrants which were taken into equity and eventuated in a settlement in the nature of a refunding of the County's warrant indebtedness under the direction of the court. No effort was made to bring in all warrant holders, but the case was held open for their participation, and interventions and supplemental decrees were had as late as March, 1936. Jackson held aloof. The County had never maintained separate sinking funds, as it was obligated to do, for its several series of warrants; indeed it was so heavily indebted that by the exertion of its full constitutional power to tax it could not keep up its interest charges. But by 1932 there was a large amount of uncollected taxes, and this gave rise to what is here claimed to be a trust preventing limitation. The court decree directed that two-thirds of the collections from these taxes be placed in a sinking fund for one series of 1932 warrants then issuing, and the other third was to make a sinking fund for other refunding warrants, Series 1932A; but for the protection of those warrant holders not before the court, a general proviso was added: "Provided further, out of *all original taxes* so collected the defendant County shall from time to time *retain in the respective original sinking funds* such proportion of said collections as the obligations chargeable against any particular one of said funds not surrendered for

refunding, bears to the obligations chargeable against said fund which have been surrendered for refunding." Jackson is interested in what was thus retained in the original sinking fund for his series of warrants. Whatever may be said about the new sinking funds established by the decree, the original sinking fund for the warrants of Jackson and other non-refunders of his class is no more a trust fund than it was before. The decree required a fair proportion of the tax collections to be retained for it, but did not take charge of it or alter its nature. It was a special pocket of the County in which money for Jackson's series of warrants was kept. It was so far a trust, more accurately a security, that equity will take an accounting of it if necessary and direct its distribution, but it is not a technical trust as to which limitation laws do not apply. Jackson stands no differently from any other bond or warrant holder in relation to a sinking fund provided for a class of bonds or warrants. He may claim a part in it only so far as he has unbarred obligations against the County. Otherwise there would be no limitation as to public bodies which maintain sinking funds.

The coupons which matured more than four years before suit ought to be eliminated from the judgment against the County and from the benefit of the accounting. The judgment is accordingly reversed for further proceedings in accordance with this opinion.