**RORICK et al. v. UNITED STATES SUGAR CORPORATION et al.**

No. 9775.

Circuit Court of Appeals, Fifth Circuit.

May 29, 1941.

Rehearing Denied July 14, 1941.

Manley P. Caldwell, of West Palm Beach, Fla., Harold W. Fraser, of Toledo, Ohio, and Wm. H. Watson and C. J. Brown, both of Pensacola, Fla., for appellants.

J. Tom Watson, Atty. Gen. of Florida, M. C. McIntosh and Millard B. Conklin, Asst. Attys. Gen. of Florida, Herbert S. Sawyer, T. M. Johnston, Scott M. Loftin, Jas. E. Calkins, Robert H. Anderson, and Paul R. Scott, all of Miami, Fla., R. C. Alley, of West Palm Beach, Fla., John D. Kennedy, of Ft. Lauderdale, Fla., T. B. Ellis, Jr., of Fort Pierce, Fla., and R. K. Lewis, of West Palm Beach, Fla., for appellees.

Before FOSTER, SIBLEY, and Mc-CORD, Circuit Judges.

SIBLEY, Circuit Judge.

Appellants Rorick, Easton and Grundy, citizens of Ohio and Pennsylvania, brought in the District Court six equitable actions each against a person of diverse citizenship as an owner of land in Everglades Drainage District, Florida, joining as defendants the Board of Commissioners of Everglades Drainage District, a public quasi corporation of Florida, and the Governor, Treasurer, Attorney General and Commissioner of Agriculture of Florida as Trustees of the Internal Improvement Fund of Florida, as having an interest in the controversy. The six actions involve the same questions, were consolidated for hearing, and all of them were dismissed as showing no cause of action. The appeals from the judgments of dismissal have been consolidated for hearing here.

The facts alleged are in brief these. The Everglades Drainage District, created directly by the Legislature, Chap. 6456, Acts 1913, Comp.Gen.Laws, §§ 1530–1628, and governed by the Board of Commissioners thereof, issued prior to 1925 about nine and a quarter million dollars of bonds, of which plaintiffs own about eight millions, and they sue in behalf of all bondholders. Interest has been in default since 1931, past due principal and interest now amount to about eight millions, and plaintiffs have a judgment for $806,784 principal rendered in 1936. In 1925 the legislature imposed annual taxes on each acre of land in the District to be certified by the Board and collected through the county officers, for the servicing of the bonds and support of the District. This whole tax was found needed for the bonds, so an additional smaller tax was laid for the general purposes of the District. Since 1931 the Board has failed and refused to certify the acreage taxes, except for the years 1932 and 1936, though collecting the additional tax, and has paid very little upon the bonds. The State Supreme Court has held the tax provisions made in 1925 to be an irrepealable contract with the bondholders, certain amendatory acts passed since being void. State ex rel. Sherrill v. Milam, 113 Fla. 491, 153 So. 100, 125, 136; State ex rel. Neafie v. Board of Commissioners, 139 Fla. 559, 190 So. 712; Id., 140 Fla. 181, 191 So. 309. The federal court has held the same. Rorick v. Board of Commissioners, D.C., 57 F.2d 1048. The taxes are a lien on the lands against which they are assessed. It is alleged they constitute a trust fund for the benefit of the bondholders, and the Board having failed and refused to collect the taxes, the bondholders are entitled in equity to foreclose the lien and have the court distribute the taxes. It is conceded that pending suit the plaintiffs have obtained a mandamus in the State courts to require the Board to certify to the tax officers for collection the back taxes and due certifications have been made. See Tennant v. United States Sugar Corp., 144 Fla. 536, 198 So. 498; State ex rel. Neafie v. Board of Commissioners, 144 Fla. 535, 198 So. 499.

The Board of Commissioners in their motion to dismiss admit that the taxes are liens, but say the bondholders may not proceed to foreclose them, their remedy being mandamus to require the proper officers to do their duty if they have not done it. The plaintiffs argue that (1) under the circumstances they may proceed as the beneficiaries of a trust to secure their rights, and that (2) the statutory contract gives them the right to foreclose.

 The Everglades Drainage District is not the ordinary drainage scheme in which the benefits are assessed against the lands, the assessments to be paid in instalments, and pledged to secure bonds issued against them. It is an important governmental project, covering eleven counties, and involving the improvement and welfare of a considerable part of the State of Florida. What has been accomplished by it is reviewed interestingly in Rorick v. Reconstruction Finance Corp., 144 Fla. 539, 198 So. 494, where it was held that the drainage taxes have a lien of equal dignity with the State and County taxes. These drainage taxes are not benefit assessments, though roughly proportioned with reference to benefit, but are true taxes imposed by the legislature, to be collected annually by the tax officers under the general tax laws until the legislature shall validly enact otherwise. They go into the hands of the State Treasurer, and it is made his duty "out of the proceeds of the taxes levied and imposed by this Article and out of any other moneys in his possession belonging to the said board or to the said drainage district, which moneys so far as necessary are hereby set apart and appropriated for the purpose, to apply said moneys and to pay the interest upon the said bonds as the same shall fall due and at the maturity of the said bonds out of the said moneys to pay the principal thereof * * *." Comp.Gen.Laws, § 1560. The Treasurer is also directed out of these monies to set aside a sinking fund, two percent of the outstanding bonds each year, to be used for nothing else, but apparently he has never had any money for that fund. The quoted language is relied on as creating a trust. If in a loose sense it be a trust, it relates only to the monies in the hands of the Treasurer, and applying no more to the money arising from taxes than any other monies of the district. But the taxes and their proceeds are not really an equitable trust, but are public funds whose status is fixed by law, and the duties of the several officers regarding them are fixed by law, and the rights of the bondholders are also fixed by law. There is nothing equitable about it. We held the ordinary sinking fund for a bond issue not to be an equitable trust in Hidalgo County v. Jackson, 119 F.2d 108. While, as we there held, a court of equity may take an account of and distribute such a fund, the federal courts have uniformly refused to enter upon the levy or collection of public taxes. Rees v. Watertown, 19 Wall. 107, 22 L.Ed. 72; Heine v. Board of Levee Commissioners, 19 Wall. 655, 22 L.Ed. 223; Barkley v. Board of Levee Commissioners, 93 U.S. 258, 23 L.Ed. 893; Meriwether v. Garrett, 102 U.S. 472, 26 L.Ed. 197; Thompson v. Allen County, 115 U.S. 550, 6 S.Ct. 140, 29 L.Ed. 472; Yost v. Dallas County, 236 U.S. 50, 35 S.Ct. 235, 59 L.Ed. 460; Preston v. Chicago, St. L. & N. O. R. R., C.C., 175 F. 487; Id., 6 Cir., 183 F. 20; Preston v. Sturgis Milling Co., 6 Cir., 183 F. 1, 32 L.R.A., N.S., 1020. Compare Cocoa Rockledge Drainage District v. Garrett, 140 Fla. 359, 191 So. 687. It is true the taxes here have all been levied, and all that is sought is to substitute an equitable foreclosure of the tax lien for the usual procedure of sale by the county tax collectors. And it must be conceded that in Florida a tax lien may be foreclosed in equity. Milton v. City of Marianna, 107 Fla. 251, 144 So. 400. Comp.Gen.Laws, §§ 1537, 896, 5034. But it is the taxing authority which may foreclose the lien. Except where it has passed to a private owner under a tax sale certificate (Standard Fertilizer Co. v. State, 130 Fla. 350, 177 So. 548), there is no case found where anyone else may foreclose it.[1] A public creditor may not. The greatest confusion would follow if every public creditor might thus proceed. These bondholders have picked out six landowners thus to sue. The tax of each is more than $3,-000. They could not in a federal court proceed against one whose tax was less. Have they the right thus to pick and choose, both as to the remedy and the persons to be pursued? If such a discretion exists in anyone, it resides in the governing Board. If there is no discretion, then all defaulters must be proceeded against alike and mandamus against the Board to require it to foreclose is the plain remedy. Delinquency in a pub-

---

[1] In Suits v. Hillsborough County, Fla., 2 So.2d 353, the County was allowed to foreclose its own tax lien.

lic officer in his ministerial duties is to be corrected by the prerogative writ of mandamus; his function is not to be usurped by a court of equity. These plaintiffs have successfully followed that remedy in the State courts. They may continue to use it so long as official delinquency persists. We think it fair to say that the legislature has since 1925 repeatedly undertaken to change the statutes about drainage taxes, and much litigation has ensued in State and federal courts. The resulting confusion we think explains the long delay in tax assessment and enforcement, rather than the neglect and collusion imputed to the Board, but not circumstantially alleged.

■■ The claim that the statutory contract itself gives the bondholders the right to enforce the tax liens rests upon this language: "The provisions of this Article shall constitute an irrepealable contract between the said board and said Everglades drainage district and the holders of any bonds and the coupons thereof, issued pursuant to the provisions hereof. Any holder of any of said bonds or coupons may either at law or in equity by suit, action or mandamus enforce and compel the performance of the duties required by this Article of any of the officers or persons mentioned in this Article in relation to the said bonds, or to the collection, enforcement and application of the taxes for the payment thereof * * *." Comp.Gen.Laws, § 1557. We think the "persons" referred to are not the taxpayers who may be under duty to pay taxes, but those having a duty to collect, enforce and apply the taxes. If each bond or coupon holder could at will begin in the court of his choice to enforce collection of taxes, so great a confusion would result as makes it unlikely the legislature so intended. The more reasonable meaning is that any bondholder may enforce his rights by compelling an orderly performance of duty by all officers and persons who are given duties by the Article. The Article originally contemplated that the drainage taxes should both support the operations of the District and pay the bonds, and the drainage tax lien was expressly made of equal dignity with that of the State and County taxes. Particular provision was made, § 1539, that if drainage taxes were not paid the land should be sold by the tax collector, and in the following Sections the disposition and redemption of land bought by strangers, or bid in for the District, were elaborately

prescribed. Nothing is provided about foreclosing the tax lien in equity, or nullifying the delays and redemptions attached to the tax collector's sale. The tax collector is charged with collecting the State and county taxes, with an equal lien, from the same lands, but a court of equity is not. We think the bondholders have a right to enforce the statutory scheme, but are not by it given power to do what they are here attempting. Compare Yost v. Dallas County, 236 U.S. 50, 35 S.Ct. 235, 59 L.Ed. 460. They make reference to Comp.Gen.Laws, § 1473, a portion of the general statute authorizing local' assessment drainage districts, by which it is provided that the boards shall enforce the drainage assessments (called taxes) against the assessed lands as in an action to enforce a mortgage, and if this is not done within ninety days after delinquency, the holder of any bond may bring the action, making the district a defendant. This we think has no application to Everglades Drainage District, which is a governmental enterprise and is established and regulated by its own peculiar statutes only. The plaintiffs here have not authority to foreclose in equity in the federal court drainage tax liens against particular tracts of land. The several suits attempting this were rightly dismissed.

Affirmed.