**MEYER v. CITY OF EUFAULA, OKL.,
et al.**

No. 2665.

Circuit Court of Appeals, Tenth Circuit.

Dec. 16, 1942.

W. R. Banker, of Muskogee, Okl. (George W. Polk, of Fort Worth, Tex., and A. Camp Bonds, of Muskogee, Okl., on the brief), for appellant.

E. C. Hopper, of Eufaula, Okl., and A. M. Frazier and Ernest B. Lykins, both of Dallas, Tex., for appellees.

Before PHILLIPS, HUXMAN and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

In accordance with the statutory scheme prescribed by Chap. 10, Art. 1, Session Laws of 1907-1908, Revised Laws of 1910, Secs. 608–643, C.O.S.1921, 4583–4618, 11 O.S.A. § 81 et seq., the City of Eufaula, Oklahoma, by resolution of its council, authorized the issuance of Series No. 2, interest bearing "street improvement bonds" in the total sum of $44,478.95, to pay the cost of street improvements within the district which it had duly created. The bonds were issued on July 15, 1921, payable in ten annual installments on the first day of September of the years 1921 to 1930, inclusive, out of a special fund provided to be created by the levy of assessments against the abutting and benefited property within the improvement district.

The appellant, a resident of the State of Mississippi, is the owner of bonds of this issue, having a face value of $10,000, in default since September 1, 1929. He commenced this suit in the district court against the City of Eufaula, and its officials, certain named property owners within the street improvement district, and the county treasurer of McIntosh County. The complaint alleged diversity of citizenship, the requisite amount in controversy, the creation of the improvement district, provision for levy of assessments, the statutory lien on the property involved for the payment of the assessments, the issuance of the bonds, his ownership of the stated amount, and the default of principal and interest thereon since September 1, 1929.

In his original complaint, he sought equitable relief, which the court granted, and which is not material to the issues here. By amendment and supplemental bill of complaint, the appellant sought equitable relief in two causes of action, the first of which is not involved in this appeal. In the second cause of action, as amended, the appellant alleged delinquent installments of assessments against certain named tracts of land included within the improvement

district, naming the amount with interest thereon; the failure of the City of Eufaula and its officials to perform their statutory duty imposed upon it to levy and collect the assessments as provided by law, and that he had no adequate remedy at law for the enforcement of his lien on the delinquent installments of the assessments. He prayed that the court determine the amount and the extent of the delinquent installments, and that the lien upon the real estate affected be foreclosed, the property sold, and the sums derived therefrom paid to the treasurer of the City of Eufaula, to become a part of the special fund for the payment of bonds and interest thereon.

The trial court sustained a motion to dismiss the second cause of action, on the ground that since foreclosure of the lien was not authorized by the laws of the State of Oklahoma, Federal equity was not available to foreclose the property or to grant the equitable relief asked. The appellant has appealed, contending in substance that the laws of Oklahoma, authorizing the creation of the improvement district, the levy of the assessments, and the issuance of the bonds, granted a lien upon the property within the improvement district to secure the payment of the delinquent installments, but afforded no adequate remedy for the enforcement of the lien or the collection of the delinquent assessments, consequently the bondholder is possessed of a right for which he has no adequate remedy at law, and is therefore entitled to the processes of Federal equity for the enforcement of his lien.

■ This suit is wholly between citizens of different states, and involves the requisite amount in controversy. Hann v. City of Clinton, 10 Cir., 131 F.2d 978; Cahill v. Hovenden, 10 Cir., 132 F.2d 422.

By force of the enabling statutes, supra, the installments of the assessments with interest on all assessments were payable to the city clerk on the due date, and by him remitted to the city treasurer daily, who retained the same in a special trust fund to pay the issued bonds and accrued interest. The assessments and each installment thereof were declared to be a lien against the lots and tracts of land assessed within the improvement district, coequal with the lien of other taxes, and prior and superior to all other liens against the lots and tracts of land; said lien to continue as to unpaid installments and interest until fully paid. Upon default of any installment and interest, it became the duty of the city clerk, promptly after the date of maturity, and on or before the 15th day of September of each year, to certify the said delinquent installment and interest then due to the county treasurer of the county in which the city is located, whereupon it became the statutory duty of the county treasurer to place the installment and interest upon the next delinquent tax list prepared by the said treasurer, and to collect the same "as other delinquent taxes are collected", and thereupon pay the proceeds to the city treasurer for disbursement on account of the assessments levied.

Thus it can be seen that in the event of delinquency, the paving assessments stood on the same footing as other delinquent taxes, and subject to the same processes for collection. But the statutory method for the collection of "other delinquent taxes", and the enforcement of the tax liens was provided elsewhere. When in 1921 these bonds were issued, the method for the collection of other delinquent taxes was prescribed by Session Laws of 1909, p. 605 (Revised Laws of 1910, Secs. 7396 to 7404; C.O.S.1921 §§ 9730–9738), as amended and supplemented by the 1919 Resale Law, Session Laws 1919, Chap. 130, p. 185, Secs. 3–6; Revised Laws 1910, Secs. 7409–7412; C.O.S.1921 §§ 9743–9746.[1]

These statutes provide that after prescribed notice, the county treasurer shall in all cases where taxes are a lien upon real property, and are due and unpaid on the first day of May, proceed to sell such real estate at public auction to the highest acceptable bidder for such taxes and cost. In the event no acceptable bid is offered for the amount of the taxes, the county treasurer is authorized to bid the same in the name and on behalf of the county for the amount of the taxes, penalties, interest, and costs, and the county thereby acquires all rights which any other purchaser could acquire by reason of the said purchase. In the event of purchase by the county as aforesaid, the real estate thus sold was subject to redemption or assignment by the county treasurer, upon the payment of the taxes, penalties, interest and costs. The statutes further provide that if the real estate thus purchased by the county is not redeemed or assigned as authorized for a

---

[1] These statutes have been repealed by various amendatory acts, and as amended, are cited as Title 68 O.S.A. §§ 381–415.

period of two years from the date of the sale, the county treasurer shall, after prescribed publication, proceed to sell the said real estate at public auction to the highest bidder for cash, and in the event no bid is offered, the county treasurer shall again bid the same in the name of the county for the amount of the taxes, penalties, interest, and costs, and issue a deed therefor in the name of the chairman of the board of county commissioners for the use and benefit of the county, " * * * provided that in no event shall the county be liable to the State or any taxing district thereof or to any special assessment lien holder for any part of the amount for which any such property may be sold". The county treasurer was further authorized, after appropriate publication, to sell the property thus acquired in the name of the county commissioners at a price to be approved by the said commissioners, and the proceeds of such sale "shall accrue to the common school fund of the county". It is further provided that upon the resale of the property as provided in Section 9745, C.O.S. 1921; Laws of 1919, p. 185, Sec. 5, supra, 68 O.S.A. § 414, the county treasurer shall within ten days execute and deliver to the purchaser at the resale a deed conveying the real estate resold, " * * * which deed shall expressly cancel and set aside all taxes, penalties, and interest and costs previously assessed or existing against said real estate, including paving taxes and outstanding tax sales certificates, and such deeds shall vest in the purchaser and grantee of said real estate an absolute and perfect title in fee simple to said land * * ". Sec. 9746, C.O.S.1921; Session Laws of 1919, p. 185, Sec. 6, 68 O.S.A. § 415.

The bondholder contends that the method and manner thus provided by the statutes for the collection of other taxes at the time the bonds were issued, not only fails to afford him any relief for the enforcement of the lien, but extinguishes the lien for all subsequent installments after the date on which the county acquires the property by sale or resale as provided by statute, hence he has no adequate remedy for the right which the statute has created and vouchsafed.

█ It appears from the record that a part of the assessments levied for the retirement of the bonds, and against which the bondholders were granted a lien on the property for the payment of the same, became delinquent subsequent to the effective date of House Bill No. 123, approved April 9, 1923, Laws of 1923, Chap. 158, p. 260, Sec. 5, 68 O.S.A. § 414. This Act amended the 1919 Resale Law by striking therefrom all reference to the extinguishment of the lien created by the paving assessments. McGrath v. Oklahoma City, 156 Okl. 34, 9 P.2d 711, 715. While the assessments and the bonds issued pursuant thereto is a contract, and statutes in force at the time of their issuance prescribing the manner of their enforcement are a part of such contract, and the bondholder is entitled to the benefit of the laws under the authority of which the bonds were issued, Perryman v. City Home Builders, 121 Okl. 150, 248 P. 605; Prince v. Ypsilanti, 140 Okl. 131, 282 P. 282; City of Ardmore v. Hudson-Houston Lumber Company, 190 Okl. 58, 120 P.2d 988; Seibert v. Lewis, 122 U.S. 284, 7 S.Ct 1190, 30 L.Ed. 1161; Sutton v. Kalka, 141 Okl. 233, 285 P. 1, yet it cannot be doubted that the Legislature may from time to time by subsequent legislation change the mode and the means for the levy and collection of the assessments, so long as the new or different mode or means does not lessen or impair the vested right to the old. Seibert v. Lewis, supra; Sutton v. Kalka, supra.

█ The 1923 amendment to the 1919 Resale Law was applicable to the collection of all delinquent taxes, including special assessments, from and after its effective date, Oklahoma City v. Vahlberg, 185 Okl. 28, 89 P.2d 962, and as applied to the assessments, enhanced the remedy available to the bondholder at the time the assessments were levied and the bonds issued in 1921. But we need not go so far in the construction of state law since, when judged by local law, whichever statute is applicable for the collection of delinquent taxes, it when construed with the statutes authorizing the lien, provides a "full and comprehensive system" by which delinquent installments of special assessments, with interest and penalties thereon, may be collected. City of Sapulpa v. Land, 101 Okl. 22, 223 P. 640, 35 A.L.R. 872; Glasser v. Goltry, 136 Okl. 182, 276 P. 738; Prince v. Ypsilanti, supra; McGrath v. Oklahoma City, supra. The method thus provided is exclusive and is and has been available to the appellant since the bonds became delinquent. Equity is not available in the state court for the enforcement of the lien

by foreclosure absent statutory authority.[2] City of Sapulpa v. Land, supra; Glasser v. Goltry, supra; see also Annotations 105 A. L.R. 1027. "The purchasers of the bonds acquired certain rights under and by virtue of the statutes which were in force at the time the contracts were entered into, but they acquired those rights and none other". McGrath v. Oklahoma City, supra, 156 Okl. 34, 9 P.2d page 715. No right has been denied which existed by force of statute or rule of decision when the bonds were issued. McGrath v. Oklahoma City, supra; Prince v. Ypsilanti, supra; Cf. Nelson v. Pitts, 126 Okl. 191, 259 P. 533, 53 A.L.R. 1137; Perryman v. City Home Builders, supra; Moore v. Otis, 8 Cir., 275 F. 747; Moore v. Gas Securities Company, 8 Cir., 278 F. 111; Hann v. City of Clinton, supra; Cahill v. Hovenden, supra.

■ Our question then is narrowed to whether Federal equity jurisdiction, based upon diversity of citizenship, will afford a separate and independent remedy for a right created by state law, and for which the state has prescribed a remedy which it has adjudged to be adequate, comprehensive, and exclusive, and for the enforcement of which it has denied any equitable relief. The appellant invokes the rule to the effect that the test of the inadequacy of the legal remedy, prerequisite to Federal equity, is the legal remedy which Federal rather than state courts afford, Russell v. Todd, 309 U.S. 280, 286, 60 S.Ct. 527, 84 L.Ed. 754; Atlas Life Insurance Company v. W. I. Southern, Inc., 306 U.S. 563, 59 S.Ct. 657, 83 L.Ed. 987, and argues that when measured by the Federal equity rule, the state statute affords no adequate legal remedy, therefore he may resort to Federal equity for the enforcement of his right by foreclosure of the lien in Federal court. But the absence of a legal remedy does not always give the "suitor free entrance to a federal court of equity". Atlas Life Insurance Co. v. W. I. Southern, Inc., supra, 306 U.S. page 569, 59 S.Ct. 660, 83 L.Ed. 987.

■ "A court of equity cannot, by avowing that there is a right but no remedy known to the law, create a remedy in violation of law, or even without the authority of law". Rees v. City of Watertown, 19 Wall. 107, 86 U.S. 107, 122, 22 L.Ed. 72. Historically, Federal equity courts have assiduously refrained from interfering with the sovereign power and authority of the states to levy and collect taxes, so long as the taxes are levied and collected in accordance with constitutionally valid authority. It has repeatedly refrained from any positive or affirmative acts which in effect substitutes its equitable processes for the legislative power and duty to levy taxes and provide the mode of their collection. Rees v. City of Watertown, supra; United States v. County of Macon, 99 U.S. 582, 25 L.Ed. 331; Meriwether v. Garrett, 102 U.S. 472, 515, 26 L.Ed. 197; Yost v. Dallas County, 236 U.S. 50, 35 S.Ct. 235, 59 L.Ed 460; Johnson v. Riverland Levee District, 8 Cir., 117 F.2d 711, 134 A.L.R. 326; Rorick v. United States Sugar Corporation, 5 Cir., 120 F.2d 418.

■ The legislative branch of the government, having the sole power to authorize the tax, equally possesses the sole power to prescribe the means by which the tax shall be collected, and to designate the officers or the processes for its enforcement. If the officers who are charged with the duty of levying or collecting taxes refuse to perform their statutory duty, the state court provides an adequate remedy by writ of mandamus. Sutton v. Kalka, supra. And a Federal court may grant the same relief ancillary to or in aid of its jurisdiction. Divide Creek Irrigation District v. Hollingsworth, 10 Cir., 72 F.2d 859, 864, 96 A.L.R. 937; Dwyer v. LeFlore County, 10 Cir., 97 F.2d 823; County of Greene v. Daniel, 102 U.S. 187, 26 L.Ed. 99; Davenport v. County of Dodge, 105 U. S. 237, 26 L.Ed. 1018.

■ The appellant, by bringing suit in the United States court, acquired no greater rights than were given him by the

---

[2] By legislative enactment, Laws of 1923, Chap. 173, p. 289, Sec. 29, 11 O.S. A. § 107, holders of bonds issued after the effective date of this Act were granted the right to institute in the name of the city or town issuing the bonds, an action in the district court of the county in which the said property is located, to foreclose the lien on the assessment, whenever such assessment is delinquent at least for a period of twelve months. But the Act was not applicable to bonds issued prior to its effective date. See City of Ardmore v. Hudson-Houston Lumber Co., 190 Okl. 58, 120 P.2d 988. Federal courts are vested with concurrent jurisdiction based upon diversity of citizenship and requisite amount in controversy. Hann v. City of Clinton, 10 Cir., 131 F.2d 978.

local statutes. The right granted was to have a tax levied and collected, but the tax was levied and the mode and method for its collection provided by the law which created it, and Federal equity courts have no inherent jurisdiction to levy a tax for any purpose, or to enforce a tax already levied, except through the agencies provided by law. Meriwether v. Garrett, supra; Yost v. Dallas County, supra; Johnson v. Riverland Levee District, supra, 117 F.2d page 716; Rorick v. United States Sugar Corporation, supra.

To afford the remedy sought here to a nonresident of the state, when the same remedy is not available to a resident thereof, on the grounds that the mode provided by state law for the collection of the tax levied is inadequate when measured by Federal notions of equitable remedies, would carry Federal equitable powers far beyond the scope which has ever been thought to inhere in its jurisdiction.

We hold that the remedy sought is not available and the judgment is affirmed.